93 F.3d 627
 96 Cal. Daily Op. Serv. 6185, 96 Daily Journal
D.A.R. 10,124
Victor CARPENTER; Allen Bennett; James Lowder; Richard
Spear; Albert C. Walker; Ronald Y. Nakasone;
Molleen Matsumura; and Michael Bauman,
Plaintiffs-Appellants,
v.
CITY & COUNTY OF SAN FRANCISCO, The San Francisco County
Recreation and Park Commission; and Mary Burns, in her
official capacity as General Manager of San Francisco County
Recreation and Park Department, Defendants-Appellees.
 No. 92-16767.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 16, 1994.
Decided Aug. 20, 1996.
 
 Margaret C. Crosby, American Civil Liberties Union Foundation of Northern California, Inc., San Francisco, California, for plaintiffs-appellants.
 Mara E. Rosales, Deputy City Attorney, San Francisco, California, for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California, John P. Vukasin, Jr., District Judge, Presiding. D.C. No. CV-90-01836-JPV.
 Before: LAY,* PREGERSON, and O'SCANNLAIN, Circuit Judges.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 In this first of two similar cases,[1] we must decide whether the City and County of San Francisco violates the No Preference Clause of the California Constitution by its ownership and display of a 103-foot concrete and steel Latin cross in Mount Davidson Park (the "Mount Davidson Cross").
 
 
 2
 * Mount Davidson Park is a roughly 40-acre public park atop Mount Davidson located in and owned by the City and County of San Francisco. Within the Park is a large, unadorned concrete and steel cross which stands 103-feet tall and 39-feet across. A copper box inside the foundation of the Cross contains a number of items including newspapers, telephone directories, two Bibles, two rocks from the Garden of Gethsemane, and a jug of water from the Jordan River. A plaque at the base of the Cross is inscribed with the words "Sunrise Easter Cross/Mount Davidson/First Service 1923."[2] There are no signs identifying the owner of the Cross.
 
 
 3
 In 1923, prior to the creation of the Park, the first Easter Sunrise service was held on Mount Davidson. Several wooden crosses were erected for the service, but they were all subsequently destroyed by fire, wind or vandals. In 1932, the City gained title to the land and established Mount Davidson Park. In 1933, the City's Board of Park Commissioners voted to authorize the allocation of public funds to build a permanent cross. The commissioners also authorized the installation of floodlights to illuminate the Cross during Easter. After receiving advice from the City Attorney in 1933 that the Cross would be constitutional under principles applicable at the time (pre-Everson v. Board of Education, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947)), the City went ahead with the project and sought approval from the Art Commission. A noted architect submitted a design for the Cross and received the Art Commission's approval. Construction of the Cross was completed in 1934.
 
 
 4
 In a dedication ceremony held that year, President Franklin D. Roosevelt pressed a golden telegraph key sending a signal from Washington, D.C. through a special direct circuit to illuminate the permanent Mount Davidson Cross. Fifty thousand people attended the event in the Park which took place on the eve of Palm Sunday in order to illuminate the Cross for Easter Week.
 
 
 5
 Between 1934 and 1987, the Cross was at times illuminated during the week before Easter and during the Christmas season. At other times, it was illuminated nightly. On February 15, 1990, the Board of Park Commissioners passed a resolution halting illumination of the Cross.
 
 
 6
 Various local religious leaders and citizens of San Francisco (collectively called "Carpenter") brought this suit against the City of San Francisco, its Recreation and Park Commission, and its Manager (collectively called "City"). The suit challenges the City's ownership and maintenance of the Mount Davidson Cross as violating the No Preference Clause and the Ban on Aid to Religion Clause of the California Constitution and the Establishment Clause of the United States Constitution. On cross-motions for summary judgment, the district court entered summary judgment for the City. Carpenter v. City and County of San Francisco, 803 F.Supp. 337 (N.D.Cal.1992). Carpenter appealed.
 
 II
 
 7
 Carpenter raises both federal and state constitutional issues. Federal constitutional issues should be avoided when the alternative ground is one of state constitutional law. Carreras v. City of Anaheim, 768 F.2d 1039, 1042-43 (9th Cir.1985). Thus, we first turn to the California Constitution to decide this case.
 
 
 8
 The No Preference Clause of the California Constitution guarantees the "[f]ree exercise and enjoyment of religion without discrimination or preference."[3] Cal. Const. art. I, § 4. The contours of the No Preference Clause have been explored by both the California courts and the Ninth Circuit. While this court has had occasion to interpret the No Preference Clause, the California courts remain the wellsprings for state constitutional jurisprudence.
 
 
 9
 In general, the religion clauses of the California Constitution are read more broadly than their counterparts in the federal Constitution. See Hewitt v. Joyner, 940 F.2d 1561, 1566-67 (9th Cir.1991), cert. denied, 502 U.S. 1073, 112 S.Ct. 969, 117 L.Ed.2d 134 (1992); Okrand v. City of Los Angeles, 207 Cal.App.3d 566, 254 Cal.Rptr. 913, 916 (1989). A plurality of the California Supreme Court has noted:
 
 
 10
 [t]he Attorney General of this state has observed that "it would be difficult to imagine a more sweeping statement of the principle of governmental impartiality in the field of religion" than that found in the "no preference" clause, and California courts have interpreted the clause as being more protective of the principle of separation than the federal guarantee.
 
 
 11
 Sands v. Morongo Unified Sch. Dist., 53 Cal.3d 863, 281 Cal.Rptr. 34, 45, 809 P.2d 809 (1991) (lead opinion) (citation omitted), cert. denied, 505 U.S. 1218, 112 S.Ct. 3026, 120 L.Ed.2d 897 (1992).
 
 
 12
 The cases interpreting the No Preference Clause stress the importance of the historical and physical context surrounding a challenged religious display on public property. In the Ninth Circuit's recent encounter with the No Preference Clause (remarkably also involving crosses on public property), the court distilled several factors relevant to determining whether a display violates the California Constitution:(1) the religious significance of the display,
 
 
 13
 (2) the size and visibility of the display,
 
 
 14
 (3) the inclusion of other religious symbols,
 
 
 15
 (4) the historical background of the display, and
 
 
 16
 (5) the proximity of the display to government buildings or religious facilities.
 
 
 17
 Ellis v. City of La Mesa, 990 F.2d 1518, 1524-25 (9th Cir.1993), cert. denied, 512 U.S. 1220, 114 S.Ct. 2707, 129 L.Ed.2d 834 (1994).[4] These factors are simply a convenient list to guide a court's analysis; they do not form a definitive test utilized by the California courts.[5]
 
 III
 
 18
 In Ellis,[6] this court held that San Diego's ownership of the Mount Helix Cross, a 36-foot Latin cross in a public park, and the Mount Soledad Cross, a 43-foot Latin cross in a public park, violated the No Preference Clause. Both crosses could be seen "from a substantial distance." Id. at 1520, 1521. Both crosses had been designated historical landmarks. See id. The Mount Soledad Cross had also been dedicated as a war memorial. Neither cross was situated with other religious symbols. Neither cross was adjacent to government buildings or religious facilities. See id. at 1526. Based on these factors, the Ellis court concluded that, in the circumstances presented there, the permanent presence of the crosses on public property violated the No Preference Clause.[7] Because the Mount Davidson Cross is so similar to the Mount Helix and Mount Soledad Crosses, Ellis controls our decision in this case.
 
 IV
 
 19
 We now apply the five factors set out in Ellis in sequence:
 
 
 20
 First, the Mount Davidson Cross is a Latin cross. The Latin cross "is the preeminent symbol of many Christian religions and represents with relative clarity and simplicity the Christian message of the crucifixion and resurrection of Jesus Christ, a doctrine at the heart of Christianity." Okrand, 254 Cal.Rptr. at 922. Christian relics, such as Bibles, rocks from the Garden of Gethsemane, and a jug of water from the River Jordan, are embedded in the Cross' base. Easter Sunrise services and other Christian rituals have long been held at the Cross. In short, the Mount Davidson Cross carries great religious significance. See Ellis, 990 F.2d at 1525. Indeed, to suggest otherwise would demean this powerful religious symbol.
 
 
 21
 Second, the district court observed that "even on a clear day, the Mount Davidson Cross is not visible or partially visible to the naked eye, or identifiable as a cross, from most San Francisco locations." Carpenter, 803 F.Supp. at 341. The district court's grant of summary judgment is reviewed de novo. Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994).
 
 
 22
 The record is replete with evidence that contradicts the district court's observation. Even if only the materials submitted by the City are examined, there is ample evidence that the Cross is visible to a substantial number of people. The declaration of defendant Mary Burns, the General Manager of the City's Recreation and Park Department, states that the Cross "has become a familiar structure in the San Francisco landscape." An historical study submitted by the City states: "Clearly visible for miles around the Bay Area, [the Cross] is a prominent feature of the San Francisco landscape." The City submitted a report dated March 18, 1989, prepared by the San Francisco Landmarks Preservation Advisory Board, which states: "[T]he cross on Mount Davidson prominently identifies it not only in the south and west parts of the city but also from locations elsewhere both within and beyond the confines of the city." In its own proposed order submitted to the district court, the City describes the Cross as "a familiar part of the western San Francisco skyline." This litany does not even include any of the ample evidence submitted by Carpenter regarding the Cross' visibility.
 
 
 23
 In short, the record shows that a significant number of people can see the Mount Davidson Cross.[8] The City's videotaped "Visibility Study" may show that spotting the Cross is difficult on a foggy day; however, constitutional guarantees should not depend on the weather, especially in San Francisco.
 
 
 24
 Third, the display of the Mount Davidson Cross does not include other religious symbols. Like the Mount Helix and Mount Soledad Crosses, it is a solitary religious display. The fact that San Francisco may have other religious symbols in its art collection spread throughout the City does not minimize the Cross' effect. "The California courts have not looked beyond the immediate area of the display in determining whether other religions are sufficiently represented." Ellis, 990 F.2d at 1526.
 
 
 25
 Fourth, the City contends that the historical significance of the Mount Davidson Cross renders it a permissible religious display. "Even a purely religious symbol may acquire independent historical significance by virtue of its being associated with significant non-religious events." Ellis, 990 F.2d at 1526. For example, in Okrand, the California Court of Appeal permitted the display of a menorah in Los Angeles City Hall. The particular menorah, known as the Katowitz Menorah, was crafted in a distinctive style and had been saved from the Holocaust. This "unique historical background [rendered it] much more a museum piece than a symbol of religious worship." Okrand, 254 Cal.Rptr. at 922.
 
 
 26
 The district court commented that the Mount Davidson Cross "has stood for fifty-seven years [and] serves as a reminder of an empirical past." Carpenter, 803 F.Supp. at 343. "[The No Preference Clause], however, requires more than mere longevity; a display's historical significance must be independent of the display's religious content." Ellis, 990 F.2d at 1526 (emphasis added). Rather than having a history independent of its religious significance, the Mount Davidson Cross' history is intertwined with its religious symbolism. The Cross was originally built by the City as a permanent replacement for the crosses that were erected in conjunction with the first Easter Sunrise service on Mount Davidson in 1923. The Cross has a long history as a site for Easter services and other Christian rituals. "This kind of historical significance simply exacerbates the appearance of governmental preference for a particular religion." Id.
 
 
 27
 San Francisco attempts to borrow the history of Mount Davidson and attribute it to the Cross. However, the Cross does not become imbued with the mountain's history merely because it was erected upon it. Mount Davidson will retain its historical significance with or without a cross atop it.
 
 
 28
 The only arguably non-religious historical event which relates to the Cross is the dedication ceremony in 1934 in which President Franklin D. Roosevelt took part in absentia. However, there is nothing about FDR's transcontinental contact that converts the Cross into an historical relic. Moreover, the secular nature of this event is questionable; the event took place on the eve of Palm Sunday in order to illuminate the Cross for Easter Week.
 
 
 29
 In contrast to the Mount Davidson Cross, the Mount Helix and Mount Soledad Crosses seem to have had even stronger historical pedigrees. Both had been declared historical landmarks. See Ellis, 990 F.2d at 1526. Both crosses had stood for a longer period of time than the Mount Davidson Cross. See id. at 1520-21. In addition, the Mount Soledad Cross had been dedicated as a war memorial in 1954. Nonetheless, the court found that "the mere designation of a display as a 'war memorial' is not enough to satisfy the more separationist No Preference Clause of the California Constitution." Id. at 1527.
 
 
 30
 Moreover, the district court expressed the view that the Cross "has become well recognized as a cultural landmark similar to other notable San Francisco landmarks, like the Golden Gate Bridge, Coit Tower, the Windmill, and the Conservatory of Flowers." Carpenter, 803 F.Supp. at 343. This view seems to rest on the mistaken notion that "the longer the violation, the less violative it becomes." Gonzales v. North Township of Lake County, Ind., 4 F.3d 1412, 1422 (7th Cir.1993). In addition, the Mount Helix Cross had similar attributes, to which the Ellis court responded: "[T]he fact that the cross also ... stands as a prominent landmark and tourist attraction, does nothing to ameliorate a violation of [the No Preference Clause]. If anything, such facts underscore the formidable nature of the display and increase the likelihood of an impermissible appearance of religious preference." Ellis, 990 F.2d at 1525.
 
 
 31
 The district court also observed that the Mount Davidson Cross "can be properly viewed as one of the works of art in [San Francisco's] public art collection." Carpenter, 803 F.Supp. at 341. The beauty of the Cross, however, has little bearing on its validity. "It simply is an attempt to create an aesthetically pleasing religious symbol; it does not obviate its religious purpose." Gonzales, 4 F.3d at 1421. In addition, the religious statuary that were found to violate the No Preference Clause by this court in Hewitt were certainly artistic. Yet, this court stated that "the argument that a religious display is art or a tourist attraction will not protect the display from restrictions on government-sponsored religion which the people of California have put in their constitution." Hewitt, 940 F.2d at 1572.
 
 
 32
 Fifth and finally, the district court correctly observed that the Mount Davidson Cross is not near City Hall or any other City-owned building, nor is it adjacent to any religious facilities. Carpenter, 803 F.Supp. at 341.
 
 
 33
 In sum, all but one of the five Ellis factors counsel that the Mount Davidson Cross violates the No Preference Clause. For California constitutional purposes, the Cross is virtually indistinguishable from the Mount Helix and Mount Soledad Crosses previously invalidated by this court. Thus, we conclude that the Mount Davidson Cross' presence on public land violates the No Preference Clause of the California Constitution. Because we hold that the Cross violates the No Preference Clause, we need not reach Carpenter's other claims under the California Constitution or the United States Constitution.
 
 V
 
 34
 The district court's grant of summary judgment for the City is reversed and the case is remanded to the district court for fashioning of appropriate relief. See Ellis, 990 F.2d at 1529.
 
 
 35
 REVERSED and REMANDED.
 
 
 36
 PREGERSON, Circuit Judge, concurring in the result:
 
 
 37
 Because Ellis v. City of La Mesa, 990 F.2d 1518 (9th Cir.1993), cert. denied, 512 U.S. 1220, 114 S.Ct. 2707, 129 L.Ed.2d 834 (1994), controls the disposition of this case, I concur in the result.
 
 
 
 *
 The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 By a separate published opinion filed today, we also decide the constitutionality, under the Establishment Clause of the United States Constitution, of a 51-foot concrete Latin cross owned and displayed by the City of Eugene, Oregon in a public park on Skinner's Butte. Separation of Church and State v. City of Eugene, 93 F.3d 617 (9th Cir.1996)
 
 
 [2]
 As plaintiffs request, the court takes judicial notice of the existence of this plaque. Fed.R.Evid. 201. However, the court does not infer any facts beyond the mere fact of the plaque's existence. See Microsoft Corp. v. BEC Computer Co., 818 F.Supp. 1313, 1319 (C.D.Cal.1992)
 
 
 [3]
 In its entirety, Article I § 4 of the California Constitution provides: "Free exercise and enjoyment of religion without discrimination or preference are guaranteed. This liberty of conscience does not excuse acts that are licentious or inconsistent with the peace or safety of the State. The Legislature shall make no law respecting an establishment of religion."
 
 
 [4]
 As a threshold matter, it must also be shown that the display is on public property. See Ellis, 990 F.2d at 1525. Here, San Francisco does not dispute that the Mount Davidson Cross stands on public property
 
 
 [5]
 The California courts have also occasionally utilized the Lemon test, familiar as the traditional analysis under the Establishment Clause of the federal Constitution, not as a controlling framework, but merely as a "touchstone." Okrand, 254 Cal.Rptr. at 917 n. 6
 
 
 [6]
 Ellis was decided by this court after the district court's summary judgment order
 
 
 [7]
 Under the United States Constitution, the Supreme Court recently upheld the erection of a cross by the Ku Klux Klan on government property designated as a public forum. See Capitol Square Review and Advisory Bd. v. Pinette, --- U.S. ----, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995)
 
 
 [8]
 It is questionable whether a religious display must be visible from a great distance beyond a public park in order to raise constitutional concerns. Whether the display is visible to users of the public park would seem to be the more relevant inquiry. For example, the religious statuary struck down in Hewitt could not be viewed from beyond the park, but they were very visible within the park. See Hewitt, 940 F.2d at 1568