**MICROSOFT CORPORATION, Plaintiff,**

v.

**BEC COMPUTER CO., INC., et al., Defendants.**

**No. CV 92–2427–KN.**

United States District Court, C.D. California.

Oct. 28, 1992.

Supplement to Court's Oct. 28th Order Re Plaintiff's Motion to Strike and Dismiss Nov. 5, 1992.

Danton K. Mak, Erin McKeown Joyce, Allen Hyman, Sheldon & Mak, Pasadena, CA, for defendants BEC Computer Co., Koty Wang, Babtech Enterprise Co., Jerry Lee and BEC Computer Co.

Jane H. Barrett, Shari Mulrooney Wollman, Arter, Hadden, Lawler, Felix & Hall, Los Angeles, CA, for plaintiff Microsoft Corp.

ORDER RE: PLAINTIFF'S MOTION TO STRIKE; DEFENDANTS' SECOND, FIFTH, EIGHTH, TENTH, THIRTEENTH AND FIFTEENTH AFFIRMATIVE DEFENSES; PLAINTIFF'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO STRIKE DEFENDANTS' SECOND CLAIM AND TO DISMISS DEFENDANTS' THIRD AND NINTH CLAIMS; AND DEFENDANTS' REQUEST TO STRIKE DECLARATION OF SHARI MULROONEY WOLLMAN

KENYON, District Judge.

The Court, having received and considered plaintiff's and defendants' motions, and the papers submitted in support thereof and in opposition thereto, **GRANTS** plaintiff's motion to strike defendants' second, fifth, eighth, tenth, thirteenth and fifteenth affirmative defenses; **GRANTS** plaintiff's motion to dismiss defendants' second, third and ninth claims for relief; and **DENIES** defendants' request to strike the declaration of Shari Mulrooney Wollman. The grounds for the Court's decision are discussed below.

## I. BACKGROUND

Microsoft is in the business of developing and marketing computer software programs for use on personal computers. MS–DOS is a computer operating system developed and marketed by Microsoft, which is currently used on seventy million personal computers worldwide. WINDOWS is a graphical interface of MS–DOS developed and marketed by Microsoft, which is currently licensed for use on more than ten million personal computers worldwide. Microsoft is the sole owner of all rights in MS–DOS and WINDOWS. Defendants BEC Computer Co., Inc., et al. are in the business of manufacturing and selling personal computers and computer components.

In 1991, Microsoft granted defendants' German and Taiwan offices permission to market and distribute Microsoft's MS–DOS software programs ("the MS–DOS License Agreement"), and granted defendants' Taiwan office permission to market and adapt its WINDOWS software programs ("the WINDOWS License Agreement"). The MS–DOS and the WINDOWS License Agreements prohibit "stand-alone" distributions of Microsoft's software without the sale or distribution of an accompanying computer system, (License Agreement, ¶ 6(a)).

Shortly after the WINDOWS License Agreement became effective, Microsoft learned through discovery that defendants had distributed MS–DOS and WINDOWS programs for prices below the royalty fees required by the License Agreements and without accompanying computer systems, Complaint ¶ 34–40. On April 21, 1992 Microsoft terminated its License Agreements with defendants based upon their stand-alone sales of Microsoft products in violation of the License Agreements.

On April 22, 1992 this Court issued an Order to Show Cause re Preliminary Injunction and Impound Order; a Temporary Restraining Order; and an Order to Show Cause re Accelerated Discovery. The temporary restraining order is presently in effect.

In response to Microsoft's complaint, defendants filed a motion to dismiss for failure to state fraud with particularity which was denied by this Court on June 29, 1992. On July 13, 1992 defendants filed their answer. On August 4, 1992 defendants filed their first amended counterclaim ("counterclaim").

## II. DISCUSSION

### A. PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' SECOND, FIFTH, EIGHTH, TENTH, THIRTEENTH AND FIFTEENTH AFFIRMATIVE DEFENSES

Rule 12(f) of the Federal Rules of Civil Procedure provides, in pertinent part: "[T]he court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." In their opposition to plaintiff's motion to strike, defendants concede that their fifth affirmative defense of misuse of copyrights and trademarks is duplicative of the tenth affirmative defense which states copyright misuse. Defendants also concede that their thirteenth affirmative defense of abuse of process is not appropriately an affirmative defense, but is rather a counterclaim. Defendants' have already stated a counterclaim for abuse of process. Thus, under Rule 12(f), defendants' fifth and thirteenth affirmative defenses are redundant. Accordingly, plaintiff's motion to strike defendants' fifth and thirteenth affirmative defenses is **GRANTED.**

Defendants' eighth affirmative defense of illegal contract asserts that one or more of plaintiff's claims is barred because at least certain elements of the agreements are illegal as being against public policy and against the antitrust laws. As discussed below, however, plaintiff's Licensing Agreements violate neither public policy nor the antitrust laws. *See infra* at pp. 1317–18. Therefore, plaintiff's motion to strike defendants' eighth affirmative defense is **GRANTED.**

■ Defendants' fifteenth affirmative defense states that "some of plaintiff's claims are barred because of plaintiff's breach of the covenant of good faith and fair dealing." In defendants' third claim for breach of the covenant of good faith and fair dealing defendants allege that plaintiff "force[d] counter-

claimants' related companies to sign two license agreements which contained illegal restrictions," counterclaim at ¶ 17. This alleged conduct does not constitute a breach of the covenant of good faith and fair dealing, however, because it occurred before the contractual relationship between plaintiff and defendants was formed. Defendants's fifteenth affirmative defense is therefore insufficient under Rule 12(f) and plaintiff's motion to strike defendants' fifteenth affirmative defense is **GRANTED.**

Defendants tenth affirmative defense states that Microsoft's claims are barred as a matter of law because Microsoft has committed violations of anti-trust laws, has engaged in anti-competitive misconduct, and has misused its copyright and trademark in violation of public policy. In particular, defendants claim that the prohibition in the Licensing Agreements against defendants selling MS-DOS unaccompanied by defendants' own computers violates the antitrust laws.

While some cases have held that the plaintiff's violation of the antitrust laws may constitute a valid defense in a copyright infringement action, *see Supermarket of Homes v. San Fernando Valley Board,* 786 F.2d 1400 (9th Cir.1986), this misuse defense has only been upheld on the merits by the Fourth Circuit. *Lasercomb of America Inc. v. Reynolds,* 911 F.2d 970 (4th Cir.1990) (applying the copyright misuse defense to defeat an infringement claim filed by a plaintiff whose license agreement prevented licensees from developing, producing, or selling any competing products for 99 years).

In *Lasercomb,* the court held that the licensing agreement violated both the public policy underlying copyright law and the antitrust laws. *Id.* at 978. With regard to the plaintiff's violation of public policy, the court stated that "Lasercomb undoubtedly has the right to protect against copying of the Interact Code [Lasercomb's software program]. Its standard licensing agreement, however, *goes much further and essentially attempts to suppress any attempt by the licensee to independently implement the idea which Interact expresses.*" *Id.* (emphasis added).

■ The instant case is distinguishable from *Lasercomb,* however. Microsoft's Li-

cense Agreements do not prohibit defendants from independently implementing programs similar to MS–DOS and WINDOWS. Furthermore, Microsoft's Licensing Agreements do not prohibit defendants from selling their computers without accompanying software operating systems. Therefore, under *Lasercomb,* Microsoft's Licensing Agreements do not violate the public policy underlying copyright law.

With regard to the plaintiff's violation of the antitrust laws, the *Lasercomb* court held that the plaintiff had included egregious anticompetitive language in its licensing agreements. *Id.* The language in Microsoft's Licensing Agreements, by contrast, does not violate the antitrust laws, as discussed below. *See infra* at pp. 1317–18. Accordingly, plaintiff's motion to strike defendants' tenth affirmative defense is **GRANTED.**

### B. PLAINTIFF'S MOTION TO DISMISS OR IN THE ALTERNATIVE STRIKE DEFENDANTS' SECOND CLAIM FOR RELIEF

Defendants' second claim for declaratory relief that plaintiff's claims are barred as a result of plaintiff's alleged violations of antitrust laws, anticompetitive conduct, and copyright and trademark misuse is duplicative of their tenth affirmative defense. As discussed above, defendants do not show that plaintiff extended its monopoly beyond its lawful scope in violation of public policy. Further, although defendants' allege that Microsoft has "monopoly power in the personal computer market," counterclaim ¶ 13(8), defendants do not claim that plaintiff violated any specific antitrust laws.

■ Assuming defendants intended to plead monopolization in violation of section two of the Sherman Act, defendants must plead the two requisite elements of a monopolization claim: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power *as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.*" *United States v. Grinnell Corp.,* 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778 (1966) (emphasis added). In *Cowley v. Braden Industries, Inc.,* 613 F.2d 751 (9th Cir.1980), a distributor and a retailer sued a manufacturer of windmills claiming that the manufacturer monopolized the windmill industry in violation of section two of the Sherman Act. The Ninth Circuit held that even though the manufacturer controlled between 70 and 80 percent of the relevant product market, "there was no evidence ... that [the manufacturer] acquired or maintained its market position through the use of predatory conduct as required by the second part [of the Grinnell test]." *Id.* at 756.

In the instant case, besides failing to allege the percentage of the relevant market that Microsoft controls, defendants fail to allege any predatory conduct by Microsoft. Thus, defendants fail to state a claim for violation of section two of the Sherman Act.

■ Assuming defendants intended to plead that plaintiff violated section one of the Sherman Act by contracting, combining or conspiring to restrain trade, defendants must plead that plaintiff entered into an illegal agreement with another distinct business entity to restrain trade. *Supermarket, supra,* 786 F.2d at 1405. Defendants, however, fail to plead this requirement and thus fail to state a claim against plaintiff for violation of section one of the Sherman Act.

■ Defendants also fail to plead the requisite elements of an invalid tying arrangement under section one of the Sherman Act. A tying arrangement is "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different product, or at least agrees that he will not purchase that product from any other supplier." *Eastman Kodak Co. v. Image Technical Services, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2072, 2079, 119 L.Ed.2d 265 (1992). Plaintiff's License Agreements neither require defendants to purchase additional products from plaintiff nor prohibit defendants from purchasing products similar to plaintiff's products from other suppliers. Plaintiff's Licensing Agreements, therefore, do not create a tying arrangement under the Supreme Court's definition in *Eastman Kodak.*

■ Finally, defendants claim that plaintiff engaged in "price discrimination among purchasers of MS–DOS in that Microsoft's

restrictions prevent the purchasers of MS–DOS from reselling to each other." Section 2(a) of the Clayton Act makes it "unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality." 15 U.S.C. § 13(a). Defendants, however, do not allege that plaintiff discriminated in price "between different purchasers." Therefore, defendants fail to state a claim under section 2(a) of the Clayton Act for price discrimination.

Accordingly, plaintiff's motion to dismiss defendants second claim for declaratory relief is **GRANTED**.

## C. PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' THIRD CLAIM FOR TORTIOUS BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

■ Defendants also fail to allege sufficient facts to sustain a cause of action for breach of the implied covenant of good faith and fair dealing. Defendants claim that plaintiff breached the implied covenant of good faith and fair dealing by using "its superior bargaining power to force counterclaimants' related companies to sign two license agreements which contained illegal restrictions," counterclaim at ¶ 17. While the covenant of good faith and fair dealing is implied in every contract, *Harm v. Frasher*, 181 Cal.App.2d 405, 417, 5 Cal.Rptr. 367 (1960), plaintiff's alleged conduct does not violate the implied covenant of good faith and fair dealing because it occurred before the contract between the parties had been formed.[1] Defendants therefore fail to state a claim for breach of the covenant of good faith

and fair dealing and plaintiff's motion to dismiss defendants' third claim is **GRANTED**.

## D. PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' NINTH CLAIM FOR ABUSE OF PROCESS

■ Defendants claim that plaintiff engaged in abuse of process by: "(a) Making claims in an attempt to gain an improper purpose; (b) Making claims against some of the counterclaimants which lack merit, thereby inducing other defendants to comply with Microsoft's wrongful demands; and (c) Bringing this lawsuit before counterclaimants' contracts with Microsoft were terminated." Counterclaim at ¶ 43.

The two fundamental elements of the tort of abuse of process are "first, an ulterior purpose, and second, a willful act in the use of the process not proper in the regular conduct of the proceeding." *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*, 42 Cal.3d 1157, 1168, 232 Cal.Rptr. 567, 728 P.2d 1202 (1986). The *Oren* court stated that "while a defendant's act of improperly instituting or maintaining an action may, in an appropriate case, give rise to a cause of action for malicious prosecution, the mere filing or maintenance of a lawsuit—even for an improper purpose—is not a proper basis for an abuse of process action." *Id.* at 1169, 232 Cal.Rptr. 567, 728 P.2d 1202. Because the improper conduct defendants allege occurred while plaintiff was "making claims" or "bringing this lawsuit," defendants do not state a claim against plaintiff for abuse of process.

■ Moreover, plaintiff's claims are absolutely privileged under California Civil Code § 47. This statute establishes an absolute

---

1. Moreover, even if defendants did state a cause of action for breach of the implied covenant of good faith and fair dealing, they would not be entitled to tort damages. Tort damages for breach of the implied covenant of good faith and fair dealing are only available if the parties have a "special relationship" analogous to that between insurer and insured. *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 692, 254 Cal.Rptr. 211, 765 P.2d 373 (1988). A special relationship is characterized by factors such as: inherently unequal bargaining positions; nonprofit motivations for entering the contract; elements of adhesion; and fiduciary responsibilities. *See Careau and Co. v. Security Pacific Business Credit, Inc.*, 222 Cal.App.3d 1371, 1395, 1398, 272 Cal.Rptr.

387 (1990). The *Foley* court held that an employee-employer relationship was not sufficiently special to justify awarding tort remedies.

The relationship between plaintiff and defendants is clearly not a "special relationship." The parties are sophisticated commercial entities dealing at arms length. Although defendants allege that the parties have unequal bargaining power, defendants have provided no evidence of unequal bargaining power or any other factors which would indicate that plaintiff and defendants have a special relationship similar to that between insurer and insured giving rise to a tort remedy.

privilege for "publications" in the course of a judicial proceeding. *Gootee v. Lightner*, 224 Cal.App.3d 587, 593–95, 274 Cal.Rptr. 697 (1990). Thus, even the filing of improper or meritless pleadings, with an ulterior purpose, is privileged and does not constitute abuse of process. *Oren, supra*, 42 Cal.3d at 1169, 232 Cal.Rptr. 567, 728 P.2d 1202. Accordingly, plaintiff's motion to dismiss defendants' ninth claim for abuse of process is **GRANTED.**

### E. DEFENDANTS' REQUEST TO STRIKE DECLARATION OF SHARI MULROONEY WOLLMAN

■ Defendant moves to strike the declaration of Shari Mulrooney Wollman, an attorney for Microsoft, which includes exhibits in support of footnote 4 in plaintiff's motion to strike. In footnote 4, plaintiff requests that the Court take judicial notice of the existence of advertisements and an article in *PC Magazine* stating that a product called DR–DOS competes with MS–DOS. Rule 201(b)(2) of the Federal Rules of Evidence allows a court to take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." In *Carpenter v. City and County of San Francisco*, 803 F.Supp. 337 (N.D.Cal.1992), the court took judicial notice of private commercial advertisements, books and maps depicting the existence of San Francisco landmarks. *Id.* at 341 n. 5. This Court agrees with the approach in *Carpenter.* In this case, plaintiff does not ask the court to take judicial notice of the accuracy of the substance presented by the article and advertisements in *PC Magazine.* Instead, plaintiff simply asks the Court to take notice of the existence of the advertisements and the article. Therefore, this Court finds that it may properly take judicial notice of the existence of the article and advertisements from *PC Magazine* that plaintiff attaches as exhibits.

■ Defendants also contend that Ms. Wollman's declaration should be stricken because she does not claim to have personal knowledge of the truth of the matters asserted in the article and advertisements, and thus the article and advertisements are hearsay. The advertisements and article attached to Ms. Wollman's declaration are used to prove the existence of DR–DOS. The Court believes that, although these exhibits are hearsay, the exhibits are submitted to the Court solely for the purpose of judicial notice and, thus, are not subject to the hearsay rules. The Court takes judicial notice of these exhibits purely for the purposes of this motion. If a party desires to use these exhibits during trial, however, they must be properly admitted as evidence.

Defendants further argue that plaintiff is judicially estopped from arguing inconsistent positions with regard to its product, MS–DOS. In the complaint plaintiff states that:

MS–DOS is the predominant operating system used with IBM compatible computers. The other available operating system for this architecture generally only appeals to sophisticated users, usually with advanced needs and/or specialized situations.

Complaint at ¶ 8(12)–(15), (25)–(27). The above statement, however, is not contradicted by plaintiff's arguments in its motion to strike that (1) DR–DOS is another operating system available and (2) an article and advertisements in *PC Magazine* state that DR–DOS is fully equivalent to MS–DOS. Defendants, therefore, wrongly invoke the judicial estoppel doctrine.

Finally, defendants contend that Ms. Wollman's declaration should be stricken because it asks the Court to consider matters that are outside the pleadings. Under the authority of *Mack v. South Bay Beer Distrib., Inc.*, 798 F.2d 1279 (9th Cir.1986), however, the Court finds that the exhibits attached to the declaration of Ms. Wollman are properly the subject of judicial notice and may be considered by this Court. Accordingly, defendants' motion to strike the declaration of Shari Mulrooney Wollman is **DENIED.**

IT IS SO ORDERED.

### SUPPLEMENT TO COURT'S OCTOBER 28TH ORDER RE PLAINTIFF'S MOTIONS TO STRIKE AND DISMISS

The Court, in response to a question asked by defendants' counsel at the hearing on November 2, 1992, clarifies its October 28th order. The Court intended to specify in its earlier order that it **GRANTED** plaintiff's motion to strike defendants' second, fifth, eighth, tenth, thirteenth and fifteenth affirmative defenses and **GRANTED** plaintiff's

motion to dismiss defendants' second, third and ninth claims for relief with prejudice.

The Court, after having read and considered the above-mentioned affirmative defenses and claims, finds that defendants would be unable to properly state such affirmative defenses and claims if given leave to amend.

IT IS SO ORDERED.