**MICROSOFT CORPORATION, Plaintiff,**

v.

**A–TECH CORP., etc., et al., Defendants.**

**No. CV–94–1102–RSWL.**

United States District Court,
C.D. California.

June 14, 1994.

---

Preston, Gates & Ellis, Los Angeles, CA, for plaintiff.

Ku and Fong, Los Angeles, CA, for defendants Yibo Bai dba Zesta Computer Zhong Liu, and L.A. Magnatech, Inc.

Kenneth S. Li, Monterey Park, CA, for defendants Mary Wong dba A–Technology Computers and dba Fantasy Unlimited.

Michael Tsair, in pro per.

Sheldon & Mak, Pasadena, CA, for defendants Bristone, Inc. and Andy Lam.

John P. Le Phong, Alhambra, CA, for defendants Helen Yao, Carlos Magpayo and Tsu–Hsien Chen.

## ORDER

LEW, District Judge.

Plaintiff Microsoft Corporation ("Microsoft") in the above captioned action has moved to dismiss the counterclaims set forth in the Answer of Defendants Yibo Bai, individually and dba Zesta Computer, Zhong Liu, and L.A. Magnatech, Inc. ("Defendants"). The matter was removed from the Court's law and motion calendar for disposition based on the filed papers pursuant to Federal Rule of Civil Procedure 78.

Now, having carefully considered all of the papers filed in favor of and in opposition to the motion, this Court hereby **DENIES** Plaintiff's motion to Dismiss Defendants' counterclaims.

## I. BACKGROUND

In February 1994, Microsoft originally filed this action against Bai, Liu, L.A. Magnatech, Inc. and a number of other parties as a result of Defendants' alleged distribution of counterfeit Microsoft products and infringement of Microsoft's trademarks and copyrights. Microsoft's claims arise out of alleged counterfeiting of its MS–DOS 6.0 operating system and its new WINDOWS 3.1 operating system. Microsoft contends that Defendants have intentionally reproduced, without Microsoft's permission, copies of these two operating systems and have actively sold these products on the open market. In conjunction with the filing of its Complaint, Microsoft filed an *ex parte* application for a temporary restraining order freezing Defendants' assets to ensure that funds remain available to satisfy any future judgment. The asset freeze order was amended by an interim order releasing funds to Defendants for the purpose of hiring counsel to defend against this action. A preliminary injunction was later issued incorporating the original asset freeze order as amended by the order granting interim relief.[1]

Defendants filed their Answer on April 4, 1994, and asserted three counterclaims against Microsoft alleging: 1) abuse of process; 2) unfair business practices; and 3) interference with business relations. Defendants contend that each of these three counterclaims arises from Microsoft's request for a freeze on Defendants' assets.

Microsoft now moves to dismiss each of Defendants' counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) on

---

1. Contrary to statements made by both Microsoft and Defendants in their respective briefs, this Court signed and filed a preliminary injunction order, lodged by these Defendants, freezing Defendants' assets on March 29, 1994. In addition, this Court signed on March 28, 1994, and filed on March 29, 1994, the lodged order submitted by Microsoft freezing the assets of the additional defendants. Had Defendants submitted a third copy of the proposed orders enjoining these Defendants along with a self addressed stamped envelope, as is required by Local Rule 3.5.5, the parties would have received copies of the signed orders long ago. In addition, a quick look at the original file on record in the clerk's office would have revealed the presence of the signed preliminary injunction orders.

grounds that Defendants cannot state a claim upon which relief can be granted.[2]

## II. DISCUSSION

### A. *Standard For A 12(b)(6) Motion To Dismiss.*

 In a 12(b)(6) motion to dismiss, the court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987); *United States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir.1981). A court need not, however, accept conclusory allegations or unreasonable inferences at face value. *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). *See also, NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986).

### B. *Abuse of Process Counterclaim.*

██ Defendants allege that Microsoft committed an abuse of process by intentionally requesting an asset freeze with its *ex parte* temporary restraining order that froze assets substantially in excess of the amount of damages which Microsoft could recover in this action. Defendants further allege that Microsoft harbored the ulterior purpose or motive of obtaining a collateral advantage against these Defendants by depriving them of funds to retain counsel and to operate their businesses, as well as denying them their right to due process.

██ The two fundamental elements of the tort of abuse of process are "first, an ulterior purpose, and second, a willful act in the use of the process not proper in the regular conduct of the proceeding." *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.,* 42 Cal.3d 1157, 1168, 232 Cal.Rptr. 567, 574, 728 P.2d 1202, 1209 (1986). The tort requires some "definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process.... There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort." *Prosser and Keeton on Torts,* § 121, p. 898 (5th Ed.1984). Courts have made clear that the "mere filing or maintenance of a lawsuit—even for an improper purpose—is not a proper basis for an abuse of process action." *Oren,* 42 Cal.3d at 1169, 232 Cal.Rptr. at 574, 728 P.2d at 1209.

Microsoft contends that even if it requested the asset freeze for the purpose of obtaining a collateral advantage, Defendants still cannot state a claim for abuse of process. Microsoft points out that the purpose of an asset freeze is to obtain an advantage by ensuring that assets will be available to satisfy any judgment that is likely to be obtained, and that a natural consequence of such a freeze is to deprive a defendant of access to his funds, whether for defense of a lawsuit or the operation of a business. Microsoft cites the *Oren* case to suggest that the mere filing or maintenance of an *asset freeze* order, even for an improper purpose, is not a proper basis for an abuse of process claim. *See Oren,* 42 Cal.3d at 1169, 232 Cal.Rptr. at 574, 728 P.2d at 1208 (holding that the filing and continued pursuit of a CEQA action for the "ulterior" purpose of extorting a monetary settlement could not give rise to a claim for abuse of process). The court in *Oren* noted that the filing of actions with an ulterior or improper motive may give rise to malicious prosecution claims, but not abuse of process claims. *Id.* at 1169–70, 232 Cal.Rptr. at 575, 728 P.2d at 1209.

Microsoft further contends that it has a right to request an asset freeze to protect assets that might be used to satisfy a judgment,[3] and therefore, the filing of such a request cannot be the basis of an abuse of process claim. Microsoft cites another case in which it was also a party, *Microsoft Corporation v. BEC Computer Co., Inc.,* 818 F.Supp. 1313 (C.D.Cal.1992), for the proposition that abuse of process claims are barred in relation to asset freeze orders in trademark cases.

---

**2.** Contrary to Defendants' assertions, Microsoft's motion is not untimely.

**3.** *See Reebok Int'l., Ltd. v. Marnatech Enterprises, Inc.,* 970 F.2d 552 (9th Cir.1992).

Defendants, however, argue that California law clearly creates a claim for abuse of process in cases involving excessive pre-judgment attachment. *See White Lighting Co. v. Wolfson,* 68 Cal.2d 336, 341, 66 Cal.Rptr. 697, 700, 438 P.2d 345, 347 (1968) (holding that "excessive attachments should be treated as giving rise to a cause of action for abuse of process rather than for malicious prosecution" *Id.* at 350, 66 Cal.Rptr. at 705–06, 438 P.2d at 348–54). Defendants argue that an excessive pre-judgment attachment is akin to an excessive asset freeze order, and therefore the abuse of process claim is applicable in this case.[4]

While both parties make legitimate arguments in their papers, this Court is persuaded by the California Supreme Court's rationale in *White Lighting* where an abuse of process claim for excessive prejudgment attachment was upheld. The court in *White Lighting* specifically distinguished four types of wrongful attachment actions, and explained in detail why excessive prejudgment attachment should be grounds for a claim of abuse of process rather than malicious prosecution. *Id.* at 348, 66 Cal.Rptr. at 704, 438 P.2d at 352. The court specifically noted that a malicious prosecution claim does not suffice in excessive attachment actions because the attaching creditor typically prevails on his claim, but for a much smaller amount than the value of the property attached. *Id.* at 350, 66 Cal.Rptr. at 706, 438 P.2d at 354. Moreover, the court explained that the "wrongfulness in the excessive attachment lies, not in the institution of the suit or the procurement of the attachment, but in the illegitimate use of the attachment process to tie up more property than is reasonably nec-

essary to secure the attaching creditor's claim." *Id.* And finally, the court stated that the excessively attached defendant should not have to wait until the final termination of the original action to sue for wrongful attachment, but should instead be able to assert the damages caused by the excessive attachment in a counterclaim in the primary action. *Id.* There can be little disagreement that an asset freeze order in a trademark case has the same force and effect of an attachment pursuant to state law, and for all intents and purposes they are the same procedural device even though each derives its existence from separate legal sources. The rationale given by the California Supreme Court in *White Lighting* applies equally well to asset freeze orders. The two equitable orders are not readily distinguishable.

However, what is readily distinguishable are the cases cited by Microsoft to support its position that Defendants cannot state a claim for abuse of process. In particular, both the *Oren* and the *Microsoft* cases cited by Microsoft addressed counterclaims that were based upon abuses in the filing of entire *lawsuits* or *actions.* There is little doubt that these cases support the proposition that an abuse of process claim does not exist simply as a result of filing the main action or lawsuit, even if the filing has an improper purpose. *See Oren,* 42 Cal.3d at 1169, 232 Cal.Rptr. at 574, 728 P.2d at 1209; *Microsoft,* 818 F.Supp. at 1318. However, the facts of this case are different from both *Oren* and *Microsoft* in that the abuse of process claim is based not on the institution of the suit, but is based instead on the alleged illegitimate use of the asset freeze process to tie up more assets than is reasonably necessary to secure Microsoft's claims. For these reasons, Defendants have sufficiently alleged the basic elements of an abuse of process claim.[5]

---

**4.** Both parties spend an inordinate amount of time debating the true meaning behind a footnote in *Reebok Int'l, Ltd. v. Marnatech Enterprises., Inc.,* 970 F.2d 552 (9th Cir.1992), which stated that "[w]hile a freeze of assets has the affect of an attachment, it is not an attachment." *Reebok,* 970 F.2d at 559 n. 10 (citing *Republic of the Philippines v. Marcos,* 862 F.2d 1355, 1361 (9th Cir.1988)). The *Reebok* court's statement that an asset freeze in a trademark case is not an attachment specifically addressed the issue of whether freeze orders are authorized by state law. The court specifically held that the equitable order imposing an asset freeze is not issued

pursuant to state attachment law, but instead derives its authority from Fed.R.Civ.P. 64, the district court's inherent equitable power, and the need to enforce the federal trademark laws. *Reebok,* 970 F.2d at 558–89. The court in *Reebok* did not address the issue of whether an asset freeze order should be treated like a prejudgment attachment for purposes of abuse of process claims. Thus, this Court places little emphasis on the *Reebok* footnote relied upon so stridently by the parties in this case.

**5.** Contrary to assertions made by both parties, the prior orders issued by this Court do not affect

## C. *Unfair Business Practice Claim.*

 In addition, Microsoft contends that Defendants have failed to state a claim for unfair business practices.[6] The purpose of the Unfair Practices Act (Bus. & Prof.Code § 17000 *et seq.*) "is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition, by prohibiting unfair, dishonest, deceptive, destructive, fraudulent and discriminatory practices...." Bus. & Prof.Code § 17001 (West 1987). The Unfair Practices Act provides a cause of action for any activity " 'that can properly be called a business practice and that at the same time is forbidden by law.' " *Farmers Ins. Exch. v. Superior Ct.,* 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487, 490–491, 826 P.2d 730, 734 (1992) (quoting *Barquis v. Merchants Collection Assn.,* 7 Cal.3d 94, 113, 101 Cal.Rptr. 745, 758, 496 P.2d 817, 830 (1972)). In essence, "an action based on Business and Professions Code section 17200 to redress an unlawful business practice 'borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under section 17200 et seq...." *Id.* 2 Cal.4th at 384, 6 Cal.Rptr.2d at 491, 826 P.2d at 734. In particular, the California Supreme Court has held that acts of abuse of process constitute violations of this section. *Barquis,* 7 Cal.3d at 113, 101 Cal.Rptr. at 758–59, 496 P.2d at 830–31.

Defendants argue, therefore, that if a claim has been stated for abuse of process, then a claim necessarily has been stated for unfair business practice because an unlawful activity was carried out as a business practice. Defendants specifically allege that Microsoft attempted to deprive Defendants of access to funds necessary to continue their legitimate business. Under the limited pleading requirements of Fed.R.Civ.P. 8(a), Defendants have sufficiently stated a claim for unfair business practices.

## D. *Immunity for Judicial Publications.*

 In addition to attacking the counterclaims on their mechanical elements, Microsoft also contends that California Civil Code

Section 47 bars Defendants' counterclaims for abuse of process, unfair business practices, and interference with business relations because these claims are aimed at a privileged publication or broadcast. Section 47 states that "[a] privileged publication or broadcast is one made ... [i]n any ... (2) judicial proceeding...." Cal.Civ.Code § 47(b). The absolute immunity created by Section 47 is not a mere defense but is a substantive rule of immunity which extinguishes the cause of action as a matter of law. *See Berman v. RCA Auto Corp.,* 177 Cal.App.3d 321, 323–25, 222 Cal.Rptr. 877, 879 (1986). Moreover, Section 47 "is a bar to liability designed to protect the rights of the individual speaker, to insure that nothing will impede the individual's access to the courts. The privilege focuses not on the timing or manner of a lawsuit, but solely on the defendant." *Id.* at 325, 222 Cal.Rptr. at 879.

 The absolute immunity created by Section 47 applies to all tort causes of action, "where the gravamen of the injury is predicated on the privileged publication of an injurious falsehood." *Gootee v. Lightner,* 224 Cal.App.3d 587, 594, 274 Cal.Rptr. 697, 700–01 (1990). Courts have extended the Section 47 immunity to claims for abuse of process where the publication is directly related to the action. *See Twyford v. Twyford,* 63 Cal. App.3d 916, 924–26, 134 Cal.Rptr. 145, 149–50 (1976) (holding that a wife's false accusation that her husband had committed a felony, contained in a "Request for Admissions," was immune from an abuse of process claim); *Microsoft Corp. v. BEC Computer Co., Inc.,* 818 F.Supp. 1313, 1319 (C.D.Cal.1992) (holding that a cause of action for abuse of process resulting from the filing of meritless claims for an improper purpose was barred by the privilege created in Cal.Civ.Code § 47). The policy and purpose of Cal. Civil Code § 47 is to immunize pleadings and testimony made in the course of judicial proceedings, including those made with actual malice or with an intent to harm. *See Gootee,* 224 Cal.App.3d at 594–95, 274 Cal.Rptr. at 697; *Pettitt v. Levy,* 28 Cal.App.3d 484, 489–91, 104 Cal. Rptr. 650, 653–54 (1972).

the merits of this claim. And this Court makes no ruling regarding the ability of this claim to survive a motion for summary judgment.

**6.** Microsoft does not appear to challenge the substantive sufficiency of Defendants' counter-

claim for interference with business relations, other than to assert the privilege defense.

### 1. *Whether Section 47 Bars Defendants' Abuse of Process Claim.*

Microsoft contends that even if Defendants could state facts to support each of the required elements for an abuse of process claim, Microsoft would still be immune from such a claim. Microsoft contends that the essence of Defendants' counterclaims are the allegedly improper statements or requests made by Microsoft in the *ex parte* application for a temporary restraining order freezing Defendants' assets. These allegations allegedly induced this Court to freeze assets in excess of an amount necessary to satisfy any judgment that Microsoft might reasonably obtain.

Defendants, however, argue that Section 47 immunity simply does not apply in this case because it is the *conduct* of abusing the asset freeze procedure for an improper purpose that is actionable in this particular abuse of process claim, rather than a *publication* or *statement* which would be the subject of a Section 47 privilege. Defendants assert that to hold otherwise would effectively preclude abuse of process claims in virtually every instance, and would also contradict the California Supreme Court's holding in *White Lighting* which allowed an abuse of process claim to exist under similar circumstances.

Microsoft counters by asserting that it is the publication of statements that were allegedly intended to induce this court to issue the excessive asset freeze order that is actionable. Moreover, Microsoft contends that Defendants' conduct-versus-publication argument is circular and that Defendants' assertion of conduct is inseparable from the publication.

As the California Supreme Court explained in *White Lighting*, the abuse of process claim lies, "not in the institution of the suit or the procurement of the attachment, but in the illegitimate use of the attachment process to tie up more property than is reasonably necessary to secure the attaching creditor's claim." *White Lighting*, 68 Cal.2d 336, 350, 66 Cal.Rptr. 697, 706, 438 P.2d 345, 354 (1968). Thus, "[t]he purpose for which the process is used, once it is issued, is the only thing of importance. . . ." *Prosser and Kee-*

*ton on Torts*, § 121, p. 897 (5th Ed.1984). Therefore, the abuse of process tort is not derived from the *ex parte* asset freeze application submitted to the court (the "publication"), regardless of whether it was deceptive or misleading. Indeed, the court itself is not suing to vindicate a wrong committed against it. The abuse of process claim in this case is derived strictly from the alleged misuse or misapplication of judicial process, otherwise justified in itself, for an end other than that which it was designed to accomplish. In other words, it is the threat or extortion, which in this case is the alleged deprivation of assets to prevent Defendants from defending against Plaintiff's claim, that is the heart of the abuse of process claim.

While the cases on this issue are somewhat contradictory, this Court finds that Defendants are correct in that this particular abuse of process claim is based on tortious *conduct* rather than a communication or publication, and therefore is not barred by the Section 47 privilege. *See Pacific Gas & Elec. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 n. 12, 270 Cal.Rptr. 1, 8 n. 12, 791 P.2d 587, 594 n. 12 (1990). The publication in this case, which is the *ex parte* application requesting the asset freeze, is only being used to prove the abuse of process claim, and is not the claim itself. *See White v. Western Title Ins. Co.*, 40 Cal.3d 870, 888, 221 Cal.Rptr. 509, 518, 710 P.2d 309, 318 (1985) (noting the "distinction between a cause of action based squarely on a privileged communication, such as an action for defamation, and one based upon an underlying course of conduct evidenced by the communication" *Id.*). For these reasons, Defendants' abuse of process counterclaim is not barred by Section 47.

### 2. *Whether Section 47 Bars Defendants' Counterclaims For Unfair Business Practices and Interference With Business Relations.*

Courts have specifically extended the Civil Code § 47 immunity to actions for intentional interference with economic relations. *Forro Precision v. Intern. Business Machines*, 673 F.2d 1045, 1055 (9th Cir.), *cert. denied*, 471 U.S. 1130, 105 S.Ct. 2664, 86 L.Ed.2d 280 (1982); *see also, Brody v. Montalbano*, 87

Cal.App.3d 725, 738, 151 Cal.Rptr. 206, 215–216 (1978), *cert. denied,* 444 U.S. 844, 100 S.Ct. 87, 62 L.Ed.2d 57 (1979); *Bledsoe v. Watson,* 30 Cal.App.3d 105, 110, 106 Cal. Rptr. 197, 200 (1973).

Microsoft argues that because its act of requesting the asset freeze and the Court's granting of an asset freeze constituted a publication in the course of a judicial proceeding, these acts are absolutely privileged and cannot form the basis of an unfair business practices claim or an interference with business relations claim.

However, for the same reasons discussed above, Section 47 does not bar Defendants' counterclaims for unfair business practices and interference with business relations.

## III. CONCLUSION

Microsoft's Motion to Dismiss Defendants' counterclaims is hereby **DENIED.**

**IT IS SO ORDERED.**